GUARDIANSHIP OF TANK and another.

*October 13—November 7, 1906.*

*Guardianship of minors: Fitness of mother: Request of deceased father for appointment of another.*

1. Upon the application by the mother of minors, after the death of their father, to be appointed their general guardian, it appeared that about twelve years before, while the wife of their father, she had been unfaithful to her marriage vow; that her conduct had been condoned by her husband, to whom she confessed, and that their marital relations continued thereafter for about a year and a half, when she procured a divorce on the ground of cruelty; and that she had married again, but had no other children. A referee found that ever since the transgression mentioned she had lived a virtuous and blameless life in that respect, and that she was a suitable person to have the care of her children. *Held,* that her former conduct was not of itself sufficient to render her unfit to be the guardian, and that, under all the facts and circumstances, there was no error in appointing her in preference to a brother of the deceased father.

2. Although the request of the parent having the custody of minor children as to their guardianship after his death should be given weight by the courts, it will not necessarily control in determining the question of suitableness as between the person so designated and the surviving parent.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This is a proceeding for the appointment of a guardian

for two minor children. The petitioner and the father of the children were husband and wife from 1892 to 1895. Petitioner in 1895 secured a divorce because of the husband's failure to support her and because of his cruel and inhuman treatment. It appears that the mother was at the time of the divorce without means, and that the father had threatened not to pay for the maintenance of the children if they were taken from him. Under these circumstances the care and custody of the children was given to the father, but the mother was given the right to visit them. This she did very regularly as long as the children remained in Milwaukee, where the mother has been since the divorce. Both parties again married. The mother, who has no other children, is now living with her second husband. After his second marriage the father lived most of the time in New York city. He died July 11, 1905, his second wife having died previously. Some time before the father's death the children were brought back to Milwaukee, and shortly after the death the mother instituted these proceedings for her appointment as general guardian of their persons.

An issue was raised by the answer of the appellants to the petition. This answer was in the nature of a cross-petition, and asked for the appointment of *Otto J. Tank* as general guardian. The mother filed a reply, and the matter was referred to a court commissioner as referee. The answer to the mother's petition alleges that the mother is an unfit person to have the care and custody of the children. It is alleged that her unfitness is shown by the fact that she sustained immoral relations with a roomer at their house about a year and a half before the divorce, that she is not a good housekeeper, and that her home is not a fit place for the children. It is further claimed that she has not a mother's affection for the children, that she was cruel and inhuman in her treatment of the father of the children, and that she is irreligious. *Otto J. Tank,* one of the petitioners in the cross-

petition, is a brother of the father of the children, and sets up that he has been married for four years, and that he and his wife have no children; that they are warmly attached to the children, and are regular attendants at the Lutheran church, which was the church the father of the children attended; that they have ample means to support and educate the children without impairing the estate left them by their father; and that the father, knowing that his death was near, wrote to him, asking him to be appointed administrator of his estate and guardian of his children, and to be a father to the boys. He now asks to be appointed as such guardian. The petitioner in her reply denies the allegations of the cross-petition which allege her unfitness. Both parties offer to support and care for the children without impairing the estate left them by their father and to give the children the religious training desired by the father.

The referee found that the mother was a fit and suitable person to have the care and custody of the children, that the immoral relation which was so largely the basis of the charge of unfitness had continued for but a short time, that it had been confessed to and condoned by the husband, and that the petitioner had lived a virtuous and blameless life in this respect ever since—a space of over twelve years. The referee also found that the evidence tending to sustain the charge that petitioner was a poor housekeeper, that she was without a mother's affection for the children, that her home was not a suitable one for the children, and that she and her present husband do not live in peace and harmony, but constantly quarrel, to be of slight probative force, and that these charges were untrue. The referee reported that the best interests of the children would be served by the appointment of the mother as general guardian. The findings of the referee were approved by the circuit court, and an order was made accordingly. This is an appeal from the order of the circuit court.

For the appellants there was a brief by *Kanneberg & Cochems,* and oral argument by *Adolph Kanneberg.*

For the respondent (petitioner) the cause was submitted on the brief of *A. C. Umbreit.*

SIEBECKER, J.  The controversy in the proceeding turned upon the point of the mother's suitableness to have the custody of the persons of the two children and the care of their education.  Sec. 3964, Stats. 1898.  The natural right of the parent to have the care and custody of her children is freely conceded, but it is strenuously contended that the evidence adduced clearly shows that the petitioner's conduct and character and her condition in life render her unfit and unsuitable to be intrusted with the children's care, custody, and education.  In support of this contention reliance is mainly placed upon the fact that she was guilty of and confessed to having had adulterous relations with a person who had resided at the home of her first husband.  This was while she was living as his wife with the father of the children and about a year and a half before she was divorced from him in 1895.  No point was made of this occurrence in the divorce proceedings.  The facts that petitioner voluntarily communicated her incontinence to her husband shortly after its occurrence, that he condoned her transgression, and that they continued their marital relations for a year and a half before the petitioner instituted the divorce proceedings, probably explain why no allusion was made to this occurrence in the divorce action.  In this divorce action she alleged cruel and inhuman treatment as the ground for divorce, and the court found it to be established.  It appeared in this divorce proceeding that petitioner had no means for supporting the children, and that the father was a fit and proper person to have their custody, care, and education, and that he was able to support them.  No finding was made by the court as to petitioner's fitness or unfitness to have custody of them.  Under

the judgment in this action the children were in the father's care and custody up to the time of his death, July 11, 1905.

The claim that petitioner's unfaithfulness in the respect charged is in itself sufficient ground to render her unsuitable to assume the trust she now seeks cannot be assented to. Such conduct must be given proper weight and consideration, and be considered in the light of all the facts and circumstances of the case, in order to ascertain her present fitness to assume the duties and responsibilities of the care, custody, and education of her children.

The following facts are material and bear upon this inquiry: The unfaithfulness charged occurred over twelve years before this proceeding was commenced. She resided for a year and a half thereafter with her husband as his wife, and during that time cared for these children. At the expiration of this period she instituted a divorce action, in which her husband appeared, but in which he made no charges of this nature. Two years after her divorce she married Mr. Meyer, her present husband. She has since then lived with him as his wife, and during this marriage she has been faithful to her marriage vows, and has performed her duty for the maintenance of a proper and suitable home. From the time of her divorce from the children's father she visited them while they resided in Milwaukee, and thereafter, by speaking of them to friends and in other ways, manifested a solicitude concerning their welfare, and evinced that she entertained a mother's interest in and affection for them. She now offers to care for them at the expense of herself and husband in her own home, to have them suitably educated in the schools, and to give them such religious instruction as their father desired they should receive. Her husband joins in her request, and pledges proper and adequate support to the children if their mother be appointed their guardian. The referee found that petitioner's conduct clearly showed reformation as to her alleged unchaste disposition and such

a reliant probity of character as to remove any claim that she is now unfit in this respect to assume full charge of the care and education of the children.   An examination of the record persuades us that this conclusion is well supported by the evidence and must be approved.   Nor do we find that any exception can be sustained to the court's and the referee's finding to the effect that petitioner is possessed of acceptable accomplishments as a housekeeper, and that she and her husband so deport themselves in their family life as to render their home a suitable place for these children to live.

Much stress is placed on the father's request that his brother be made guardian after his demise.   Courts always attach weight to such a request of departed parents, but they are not bound to control the court in determining the question of suitableness between the person so designated and those who sustain the parental relationship to the child. The courts have always recognized the sanctity of the parental relation and the parent's right to the care and custody of the children, unless it clearly appears that the parent is an improper and incompetent person to be intrusted with them. In considering this question the welfare of the child is always to be kept in mind.   An important consideration in this respect is that the child should not be subjected to the contempt and derision consequent on having its parent declared to be an unworthy person, unfit to care for and nurture him. Applying these considerations to the situation presented by this record, we do not find sufficient evidence to impeach the referee's and the court's conclusion to warrant the inference that their judgment is not well founded, and to sustain the claim that the court erred in awarding the guardianship to the mother and in denying the relief prayed for by appellants.

*By the Court.*—Order affirmed.